## HINDMAN et al. v. HAURAND et al.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

CONSTRUCTION OF WILL—LEGACIES—CHARGE ON REAL ESTATE.

    After creating several legacies, testator provided that, "after the bequests and provisions above mentioned," the residue of his estate, real and personal, should go to his wife. Subsequently testator was obliged, because of sickness, to use and dispose of the personalty which he had intended should pay the legacies. *Held*, that on his death without sufficient personalty to pay the same, the realty could not be charged therewith.

Appeal from special term, New York county.

Action by Mary E. Hindman and others against Ellen F. Haurand, individually, and as executrix of Bernard J. Haurand, deceased, and others, to charge real estate with legacies. From a judgment for defendants, plaintiffs and certain defendants appeal. Affirmed.

After creating several legacies in favor of his relatives, testator provided that, "after the bequests and provisions above mentioned," the residue of the estate, real and personal, should go to his wife.

The following is the opinion of the lower court (Ingraham, J.):

The only question in this case is whether certain legacies to the nephews and nieces of the testator are charges upon the testator's real estate, the personal estate not being sufficient to pay the debts and expenses of administration. The general rule is stated by Chancellor Kent in the case of Lupton v. Lupton, 2 Johns. Ch. 623, as follows: "The real estate is not as of course charged with the payment of legacies. It is never charged unless the testator intended it should be, and that intention must be either expressly declared or fairly and satisfactorily inferred from the language and disposition of the will." In that case it was held that the clause, "I give and devise and bequeath all the rest, residue, and remainder of my real and personal estate not hereinbefore already devised or bequeathed," did not furnish evidence of an intention to charge land with pecuniary legacies, the chancellor saying: "If that residuary clause created such a charge, the charge would have existed in almost every case, for it is the usual clause, and a kind of formula in wills. It means only when taken distributively reddendo singula singulis that the rest of the personal estate, not before bequeathed, is given to the residuary legatees, and that the remainder of the real estate, not before devised, is in like manner disposed of. It means that the testator does not intend to die intestate as to any part of his property, and it generally means nothing more." That case has established the rule in this state, and subsequent cases, so far as I am aware, have simply applied this rule to the peculiar phraseology of each will required to be construed.

The will in this case, after giving the pecuniary legacies that are now sought to be charged upon the real estate, provides as follows: "(7) After the bequest and provisions above mentioned, I give, devise, and bequeath to my beloved wife, Ellen F. Haurand, all the rest, residue, and remainder of my estate, real and personal, wheresoever the same may be, and of whatsoever character or description the case may be known, to my beloved wife, absolutely, and to her heirs and assigns, forever." I do not think that this clause, standing alone, indicates an intention to charge legacies of money upon the testator's real estate. It is, in substance, the same as the provision in the will considered in the case of Lupton v. Lupton, and the use of the words "after the bequest and provisions above mentioned" did not indicate that the testator intended to change the rule of law as to the fund or property from which the pecuniary legacies were to be paid. The only intention that can be drawn from this language is that he intended that all his personal property not necessary to satisfy the bequests and provisions contained in

the will should go to his wife, and the fact that he united with that provision a clause giving all his real estate to his wife cannot have the effect of expressing an intention that the real estate should only go to his wife charged with the payment of legacies that were payable only out of personal property. I think it most probable that this contingency was not presented to the testator at all when he made this will, and there is nothing to show that he considered the question as to whether or not these legacies were to be paid by the sale of the real estate in case his personal estate was not sufficient to pay them. But, in order to hold that the legacies were chargeable upon the real estate, it is necessary to find affirmatively that the question did present itself to the testator, and that he intended that they should be so charged. There is nothing in this will that directs the payment of the legacies before the residuary estate shall take effect, as in the case cited of Lupton v. Lupton, where the legacies are to be paid as a condition upon the vesting of the real estate. That would show an intention that the devise should only take effect when the legacies were paid. But in this case there is no direction as to payment. In each case cited by the plaintiff there was either express direction to pay the legacies before the devise was to take effect, or the gift over was after deducting the legacy, or there was language importing an intention of the testator. to postpone the vesting of the devise over until the specific legacies had been paid. But in this case there is no such provision. It is after the bequest and provisions of the will, "I give, devise, and bequeath," not after the payment of the legacies contained in the will; and thus, as stated by ·Chancellor Kent in Lupton v. Lupton, "it is not sufficient that debts or lega-·cies are directed to be paid; that alone does not create the charge, but they must be directed to be first or previously paid, or the devise declared to be made after they are paid."

Much of the testimony of Mrs. Haurand as to the statements made to her by the testator, which was taken before the referee and submitted to me, is incompetent as personal transactions between herself and the testator; but I do not think that anything that appears in her testimony should change the construction that I have given to the words used. At the time the will was made, the testator was in business, with considerable money in the bank; just how much at the date of the making of the will does not appear. Nothing appears, however, to show that he at the time was without any personal property from which these legacies could be paid, and thus create an inference that he must have intended them to be paid from his real estate.

I think, therefore, there should be judgment for the defendants, that the legacies are not a charge upon the real estate; the costs of the guardian ad litem to be paid out of the estate.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, .and O'BRIEN, JJ.

H. Aaron, for appellants.
A. N. Weller, for respondents.

VAN BRUNT, P. J.　It may not be at all necessary to add anything to the opinion which was delivered by the learned justice in the court below upon the trial of this case. We think that he satisfactorily demonstrates that the language of the will in question has never been considered to be of such a character as to justify the charging of the payment of legacies upon real estate. The rule in respect to this question was laid down in the case of Lupton v. Lupton, 2 Johns. Ch. 614, and does not seem to have been departed from, as the same rule is enunciated in Briggs v. ·Carroll, 117 N. Y. 288, 22 N. E. 1054. The authorities cited by the counsel for the appellants in regard to these provisions of a will do not seem to have introduced any new rule of interpretation; it being held that the whole question is one of intent, to be de-

termined upon the language of the will and the circumstances surrounding the testator, aided by the light which adjudged cases sometimes throw upon such language and circumstances. Wiltsie v. Shaw, 100 N. Y. 191, 3 N. E. 331. In the case cited, the testator died, leaving personal property exceeding $50,000 in value over all indebtedness, besides certain real estate. By his will, after making bequests amounting to $1,100, he gave to his executors $20,000, in trust to invest said sum in the best securities they could obtain, and to use the income for the benefit and maintenance of the testator's son during his life, and upon his death to pay over the principal. The residue of his estate, real and personal, he gave to another party. It was held that the legacies were not charged upon the real estate of the testator, the court saying:

"It is clearly not sufficient that the legacy is directed to be paid. The cases all involve something more,—a direction that it be first or previously paid, or the residuary devise is after its payment, or is to a person with directions to. pay, or is of all not herein otherwise disposed of."

The language of the will in question does not seem to come within the rule which is above laid down. "After the bequests and provisions above mentioned" does not seem to be any stronger than the words "all the rest, residue, and remainder." It is to be observed, also, that, shortly after making the will in question, the testator had personal property sufficient to meet all the legacies therein contained, and that in consequence of ill health, which prevented him from continuing his business, and required him to use part of this personal property for living expenses, such personal property was so reduced at the time of his death as not to be sufficient to meet the legacies. Under these circumstances, the deficiency was not so great and obvious as to preclude any possible inference that the testator did not realize it, or that he might have intended before his death to make up the deficiency. The evidence shows that, shortly after making the will, the deficiency was actually made up; bringing the case clearly within the principle expressed in Briggs v. Carroll, su¹ ra.

The judgment should be affirmed, with costs. All concur.

---

### BLACK v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department. March 6, 1896.)

NEGLIGENCE—CABLE CARS—EVIDENCE.

 Negligence on the part of those in charge of a cable car cannot be inferred merely from the fact that as plaintiff was about to take his seat he was thrown to the floor by the sudden starting of the car, there being no evidence that any unnecessary or unusual force was applied by the gripman.

Appeal from superior court of New York City, jury term.