In the Matter of the Estate of HARRIET HANFORD, Deceased.

Surrogate's Court, Oneida County, April 11, 1930.

*P. H. Murphy,* for the administrator c. t. a.

*Bernon K. Tourtellot,* for Henry Bowman, Jr., as special guardian.

Evans, S.   The question to be answered here is whether a legacy of $1,000, provided in the will of this testatrix, is a charge upon the real property.   Mrs. Hanford died in the city of Utica on March 24, 1928, at the great age of 103 years.   She left a last will and testament bearing date the 12th of March, 1925.   Its provisions are explicit and simple.   She left no husband and no descendants. A nephew of her late husband, named Henry Bowman, lived in Syracuse, N. Y.   To him and his wife the testatrix willed the sum of $1,000 in trust for the benefit of his son, Henry Bowman, Jr., a minor, to be paid to him with accumulations when he attained his majority.

Should the minor not live until reaching the age of twenty-one years, then the legacy is payable to his parents or the survivor of them.

The sum of $100 is bequeathed to the cemetery association for the perpetual care of the burial lot of Henry Bowman, Sr., in Forest Hill Cemetery, Utica, N. Y.   The residuary estate is divided into eight parts, among grandnephews and great-grandnephews of the testatrix.   Henry Bowman and Albert Batty were named executors. Mr. Batty renounced his right to act as executor.   Mr. Bowman qualified as executor and acted as such until the time of his death on September 28, 1928, and thereupon Mr. John W. Frisbie, one of the residuary legatees, was appointed administrator with the will annexed and is now acting as such.

The will, by its terms, does not make the legacy to Henry Bowman, Jr., a charge upon the real estate.   It gives to the executors the power to sell and convey real estate.   There is evidence that the testatrix had a plan to dispose of her property by will and to recognize who were the natural objects of her bounty.   The residuary estate was divided into eight parts in order to establish a basis of equality between the Frisbie and Carter families, remote blood relatives of the testatrix.   The legacy to Henry Bowman, Jr., was pursuant to a desire of the testatrix, as expressed by her to witnesses,

to make a gift to the boy and thus please his father. She also related how Henry Bowman, Jr., desired to become a physician and that this legacy would be of some help in paying the expenses of his professional education. Although young Bowman and his father were relatives of the husband and not her own, there is evidence that the testatrix entertained for them a high degree of affection and regard. . The fact that Henry Bowman, Sr., is named as executor of her will and the fact that she and her husband are buried in the Bowman lot in Forest Hill Cemetery are a fair index of her sentiments.

Reference to these incidents is made for the purpose of determining whether there existed in the mind of the testatrix a distinction between a relative of her late husband and her own relatives. The natural claim of blood relatives as distinguished between legatees not related to a testatrix is a factor to be considered in arriving at testamentary intent. (*Bevan* v. *Cooper*, 72 N. Y. 317, 325.)

This arbitrary standard, I think, has no force in the case under consideration for reasons already stated.

The agreed value of the real property owned by the testatrix at the time of her death was $15,600 and clear of liens. The value of the personal property was $125.15, being the proceeds of a sale of furniture and household goods by the executor.

At the time of the execution of the will the testatrix owned money on deposit in a bank amounting to $1,529.57. This sum represented the personal property owned by the testatrix and was entirely depleted at the time of her death. The real property was in need of repairs and the taxes were increasing. Lack of income appears to have worried the testatrix and she commented upon her inability to make repairs and also expressed doubt whether she would have enough property to sustain her until the end.

In seeking to learn the intent of the testatrix, it is necessary to consider all the surrounding circumstances at the time when the will was executed and not what subsequently occurred. (*Matter of Hoffman*, 201 N. Y. 247, 255; *Morris* v. *Sickly*, 133 id. 456.)

It is apparent that for some years prior to the death of the aged woman her finances were diminishing and that she realized this unpleasant fact. While she was nearly 100 years of age when the will was executed, her physician had informed her that she might expect to live several years. She did, in fact, live three years. Her bank account, as stated, showed $1,529.57 when the will was drawn. Even if this deposit had remained intact to the end of her life, it seems to me that by no stretch of imagination could the testatrix have contemplated that this sum would pay $1,100 in legacies, funeral expenses, administration expenses and

the reasonable expectation of claims for nursing and physicians' services.

This isolated fact, while strong, is not in itself conclusive. Coupled with certain provisions in the will the reasonable conclusion seems to be that the testatrix intended and desired that her real property should be sold and converted into cash and divided among the legatees and devisees mentioned in her will. (*Briggs* v. *Carroll*, 117 N. Y. 288.)

There is no devise of specific real property to a particular devisee. The several shares to which they are entitled in the real property renders a sale practically mandatory.

The residuary clause being general and blending both real and personal property supports the above conclusion. (*Scott* v. *Stebbins*, 91 N. Y. 606; *Carley* v. *Harper*, 219 id. 295.)

The power of sale to the executors is another circumstance that strengthens this view. (*Kalbfleisch* v. *Kalbfleisch*, 67 N. Y. 354.)

From the language of the will and in the light of all the surrounding circumstances, I think that the testatrix intended and expected that the legacy of $1,000 to Henry Bowman, Jr., should be paid and that her real property should be held chargeable with its payment. (*Carley* v. *Harper*, 219 N. Y. 295.)

Decreed accordingly.